42 SUPREME COURT OF WISCONSIN,

Hemmingway vs. The Chicago, Milwaukee & St. Paul R. Co.

HEMMINGWAY, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*April 3 — June 20, 1888.*

*Railroads: Carriers: Passing station without stopping: Failure to notify passengers: Injury to infant passenger by jumping from train: Negligence: Evidence: Res gestæ: Instructions to jury: Immaterial error.*

A boy about eleven years old was sent by his mother on an errand to a city seven miles distant. She cautioned him generally not to get off from the train while it was in motion. The conductor asked him where he was going and took his fare, but failed to inform him that the train (a freight train) first ran past the platform at the station without stopping and afterwards backed down to the platform to enable passengers to alight. As the train slowly passed the platform in the first instance another passenger told the boy that he guessed the train would not stop, and himself stepped to the platform. In attempting to follow, the boy fell under the wheels and was injured. *Held:*

(1) Upon the evidence the jury was justified in finding that the conductor was negligent in not informing the boy that the train would first pass the platform and afterwards back down and stop, or in not having some one present to prevent him from leaving the car.

(2) The jury was justified in finding that the boy was not guilty of contributory negligence.

(3) The boy's mother, having cautioned him as to the dangers of the route to the extent of her knowledge, was not guilty of negligence.

(4) Evidence of what the other passenger told the boy as to the train not stopping was admissible as part of the *res gestæ.*

(5) Although it was held on the former appeal that there was no negligence in running the train past the platform without stopping, it was not error for the trial court, in charging the jury, to allude to the failure to stop for the purpose of showing that, in view of it, it might be the duty of the company to instruct the boy how to act.

(6) A charge that the employees of the company were bound to exercise the *utmost* care, diligence, and foresight for the safety of the boy while under their charge, is *held*, while not strictly correct,

Hemmingway vs. The Chicago, Milwaukee & St. Paul R. Co.

not to have been prejudicial to the company, where the only neglect consisted in the failure to inform the boy of the way in which the train would be moved or to have some one present to prevent him from leaving the train as it passed the platform.

APPEAL from the Circuit Court for *Walworth* County.

The facts are stated in the opinion and in the report of the former appeal. 67 Wis. 668. Upon the second trial the plaintiff had a verdict for $7,600, and from the judgment entered thereon the defendant appealed.

For the appellant there was a brief by *John W. Cary,* attorney, and *H. H. Field,* of counsel, and a separate brief by *John T. Fish,* of counsel, and the cause was argued orally by *Mr. Fish* and *Mr. Field.* They contended, *inter alia,* that the defendant and its employees had the right to assume that the plaintiff would remain in his seat in the car and not attempt to jump from the train while in motion; and while pursuing their duties in the lawful and proper management of the train they were not bound to anticipate the imprudent conduct on the part of the plaintiff in attempting to jump from the train, which produced the injuries complained of. *Detroit & M. R. Co. v. Curtis,* 23 Wis. 152; *Secor v. T., P. & W. R. Co.* 10 Fed. Rep. 15; *Illinois Cent. R. Co. v. Green,* 81 Ill. 19; *Pennsylvania R. Co. v. Zebe,* 33 Pa. St. 318; *Kentucky Cent. R. Co. v. Thomas's Adm'r,* 79 Ky. 160; *Hickey v. B. & L. R. Co.* 14 Allen, 429. The defendant was only required to operate its train in a prudent and careful manner, and was not bound to provide against every possible or conceivable cause of injury, or against the imprudent act of the plaintiff. *Loftus v. Union Ferry Co.* 22 Hun, 33, 84 N. Y. 455; *Dougan v. Champlain Transportation Co.* 56 N. Y. 1; *Cleveland v. New Jersey S. Co.* 68 id. 306; *Lafflin v. B. & S. W. R. Co.* 106 id. 136; *Chicago, B. & Q. R. Co. v. Hazzard,* 26 Ill. 380; 2 Wood's Railway Law, sec. 303; *Gallaher v. C. C. R. Co.* 37 La. Ann. 288; *Wood v. C., M. & St. P. R. Co.* 51 Wis. 196;

*Mitchell v. C. & G. T. R. Co.* 51 Mich. 236; *Brown v. E. & N. A. R. Co.* 58 Me. 384; *Emerson v. Peteler,* 35 Minn. 481. In this case it is an undis)uted fact that none of the persons in charge of the train *knew* that the plaintiff had left his seat and gone out on to the platform, or that he was about to do so. In the absence of such *knowledge,* no negligence can be predicated for the failure to warn him against the consequences of such an act. *Griswold v. C. & N. W. R. Co.* 64 Wis. 652; *Carpenter v. B. & A. R. Co.* 97 N. Y. 494, 49); *Paulitsch v. N. Y. C. & H. R. R. Co.* 102 id. 280; *Straus v. K. C., St. J. & C. B. R. Co.* 75 Mo. 185; *Felton v. C., R. I. & P. R. Co.* 69 Iowa, 577. The plaintiff's injuries were brought about by his own contributory negligence. *Detroit & M. R. Co. v. Curtis,* 23 Wis. 152, 159; *Jewell v. C., St. P. & M. R. Co.* 54 id. 610; *Solomon v. M. R. Co.* 103 N. Y. 437; 2 Wood's Railway Law, 1139 *et seq.;* Hutchinson on Carriers, 617; Thompson's Carriers of Passengers, 266, 267; Beach on Contributory Negligence, 157, note 3; *Haas v. C. & N. W. R. Co.* 41 Wis. 44; *Strong v. Stevens Point,* 62 id. 255, 256; *Wendell v. N. Y. C. & H. R. R. Co.* 91 N. Y. 420; *Brown v. E. & N. A. R. Co.* 58 Me. 384; *Messenger v. Dennie,* 137 Mass. 197; 141 id. 335; *Musser v. C., R. I. & P. R. Co.* 68 Iowa, 602; *Moore v. P. R. Co.* 99 Pa. St. 301; *Ludwig v. Pillsbury,* 35 Minn. 256; *Motel v. S. A. R. Co.* 2 How. Pr. (N. S.), 30; 99 N. Y. 632; *Cotter v. F. & S. R. Co.* 15 Phil. 255. The court erred in admitting in evidence the conversation with a passenger upon the train, in no way connected with its management or with the company, and the statement made by him to the plaintiff to the effect that he guessed the train would not stop at the depot. *Filer v. N. Y. C. R. Co.* 59 N. Y. 351; *Illinois Cent. R. Co. v. Green,* 81 Ill. 19; *Pabst v. B. & O. R. Co.* 2 McArthur, 42, 45, 50; *Gulf, C. & S. F. R. Co. v. Wallen,* 26 Am. & Eng. R. Cas. 219; *Frost v. G. T. R. Co.* 10 Allen, 387; *Taber v. D., L. &*

*W. R. Co.* 4 Hun, 765, 769; *Kearney v. G. S. & W. R. Co.* 18 L. R. (Ire.), 303; *Joy v. Winnisimmet Co.* 114 Mass. 63. The court erred in charging that it was the duty of the defendant "*to exercise the utmost care, diligence, and foresight for the safety*" of the plaintiff. Thompson on Carriers, 209, sec. 8; *Moreland v. B. & P. R. Corp.* 141 Mass. 31; *Pennsylvania Co. v. Marion,* 104 Ind. 239.

John *Winans* and *Ogden H. Fethers,* for the respondent.

The following opinion was filed April 17, 1888:

ORTON, J. This action is to recover damages for personal injuries to the plaintiff, caused by the alleged negligence of the defendant. It has been twice tried, and in both instances the plaintiff recovered, and this is its second appearance in this court. The evidence was substantially the same on both trials, and the facts are very fully stated in the report of the case on the former appeal (67 Wis. 668), and therefore need not be repeated. The negligence charged upon the defendant in the complaint is, *first,* the failure of its servants in charge of the freight train on which the plaintiff was a passenger to stop the train at the depot or depot platform when it first arrived there; and, *secondly,* their failure to explain to the plaintiff why said train passed said station without stopping, or to give him any information or notice of such fact or in relation thereto. On the first trial the court substantially instructed the jury that the defendant owed the plaintiff the first of said duties, but not the second. On the first appeal this court held that the company did not owe the plaintiff the duty to stop the freight train at the platform. As to the second of said duties, and now the only one to be considered, Mr. Justice LYON said in the opinion: "Whether the court ruled correctly or otherwise in holding that the defendant was under no obligation to anticipate that the plaintiff would attempt to leave the train when he did, which we have

seen was equivalent to ruling that *it was not bound to notify the plaintiff that the train would pass the depot without stopping*, is a question not properly before us on this appeal. Hence we do not determine it." On the last trial, therefore, the neglect to so inform the plaintiff was the sole ground of recovery. The negligence of the defendant in this one respect was submitted to the jury as a question of fact, with the instruction that the defendant's servants " were required to give the plaintiff such care and attention as his safety reasonably required or demanded, in view of his tender years and presumable lack of experience," and much greater care than to an adult passenger. All the general instructions excepted to relate to this duty of the defendant to the plaintiff only indirectly, as a statement of the general principles of law applicable to the age and condition of the plaintiff, and the relations of the defendant towards him as a passenger, to aid the jury in determining the question whether the defendant was negligent in the respect above stated. Conceding that these instructions were correct, the contention of the learned counsel of the appellant is that the verdict is unsupported by the evidence.

On the first trial the jury were instructed, as a matter of law, that the defendant was not guilty of negligence in not causing the plaintiff to be informed that the train would not stop at the platform in the first instance, or to be warned not to attempt getting off at the platform while the train was moving, or to be instructed as to the movements of the train on its arrival at Janesville; for all this was implied in the instruction that the employees of the company were not bound to *anticipate* that the plaintiff would or might attempt to get off at the platform while the train was moving. On the last trial the court did not instruct the jury, as matter of law, that the defendant was negligent in this respect, but left that question to the jury as a question of fact. The facts being given or stated, negligence may be

a question of law; but in this case we choose to treat the question as the court below treated it, as one of fact for the jury; and if in our view the evidence warranted the verdict based upon the finding of such negligence, it ought not to be disturbed.

1. We think that the facts justified such a finding and verdict. The plaintiff was a boy ten years and ten months old,— an ordinary country boy. He resided at Hanover, about seven miles west from Janesville. He was sent to Janesville by his mother on some errand, with the caution that he must not attempt to get off the train while in motion. He went to the caboose, and got on without paying his fare or obtaining a ticket. There were two other passengers, a gentleman and lady. Soon after the train had started, the conductor came into the caboose, and found the boy sitting in a seat, and asked him his name and where he was going. The boy told him, and gave him ten cents as his fare. The conductor remained in one apartment of the caboose, without saying anything more to the boy, until the train came near the round-house, about a mile west of the station. He then left the caboose and passed over the train to the engine; and when the engine came opposite the depot he stepped off and went into the office to register his train. When the caboose came to the platform, the gentleman who was in the caboose with the boy went out of the car and stood on the lower step a moment, and then stepped off the car to the platform. The plaintiff also left his seat and went out of the caboose and stood on the upper step; and as the train was about to pass the platform he jumped off, or attempted to do so, but struck against the gentleman who got off before him, and fell under the wheels and was injured. It was customary for this freight train to so pass the platform without stopping, and to go on a distance beyond a switch, to allow the passenger train there waiting to pass on westwardly on the main track.

Then the freight train is backed up to the platform to allow passengers to get off. There is no evidence that either the plaintiff or his parents knew of this customary movement of the freight train. The plaintiff testified that the gentleman with him said that he guessed the train would not stop; but that he should have attempted to get off there any way, as he was frightened and excited, and thought that the train would carry him off and he would not be able to get back. None of the employees of the defendant paid any attention to the plaintiff after he had told his name and destination and paid his fare in the caboose. The plaintiff evidently supposed that the train would stop at the platform in the first place, so that he might get off. When it did not stop, he did not know when or where it might stop, and he feared that he would be carried away he knew not where; and he evidently supposed that it was necessary for him to jump off as he did, as his last chance of stopping at Janesville. All this seems perfectly natural and consistent with the age and experience of the infant plaintiff. He had been to Janesville three times before, but twice with others; and once, when alone, the caboose stopped at the platform and he got off there. To this boy plaintiff it was unaccountable that the train did not stop at the platform. He knew no reason why it should not, and he knew of no other chance of getting off the train. It was running slowly at the time; and if he had time to think he evidently thought that he could get off safely.

*Wherein* did the conductor fail in his duty to the plaintiff under these peculiar circumstances? is the question that was left to the jury; and the question on this appeal is, *Wherein* were the jury warranted in finding that he failed in his duty? It seems to us that he so failed at the time he asked the plaintiff his name and where he was going, and received his fare. He had no reason to suppose that the boy had ever been to Janesville before on this freight train, or that

JANUARY TERM, 1888.          49

Hemmingway vs. The Chicago, Milwaukee & St. Paul R. Co.

he knew of this unusual movement of the train past the depot, and he might well have supposed that the boy would be frightened when they passed the depot without stopping and fear that he was being carried past his destination, and he might also have supposed and anticipated that he would attempt the dangerous expedient of trying to jump off at the depot from the moving train. It would seem that if the conductor had ordinary judgment and discretion, or had been ordinarily thoughtful and prudent, he would have so supposed and anticipated. The questions he put to the plaintiff might well have suggested to him to ask him still further if he knew that the train did not stop at the depot, but would pass by some distance and then back up so that he might get off with safety. The conductor might have cured or supplied this failure of his duty to the plaintiff by being present, or by having some one present when the plaintiff attempted to leave the train, and preventing him from doing so to his injury. He evidently thought nothing about it and cared nothing about it. The boy plaintiff was under his care and protection, and his inexperience and helplessness appealed most strongly to that care and protection, and yet he left him without instruction or caution in such a dangerous emergency. *Herein* we think the jury were justified in finding such a want of ordinary care and prudence as to make the defendant liable. This disposes of the main question as to the liability of the defendant for negligence in not sufficiently caring for the plaintiff.

2. But it is contended that the negligence of the plaintiff in attempting to jump from the moving train contributed to his injury. It was the peculiar province of the jury to determine that question. *Parish v. Eden*, 62 Wis. 272; *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489; *Curry v. C. & N. W. R. Co.* 43 Wis. 685; *Leavitt v. C. & N. W. R. Co.* 64 Wis. 228. As a general rule, it is negligence for an adult person to jump from a train of cars in motion. But

VOL. 72 — 4

this is not an invariable rule. A passenger may be exonerated from blame by being suddenly put into a condition of nervous excitement and alarm by the fault of the company, and who jumps from a moving train under a sudden impulse to save himself from serious inconvenience. Whether a justification exists may depend upon the speed of the train and other circumstances, or upon whether he did what careful and experienced persons generally would be likely to do under similar circumstances. Whart. Neg. § 377; *Robson v. N. E. R. Co.* L. R. 10 Q. B. 271; *Filer v. N. Y. C. R. Co.* 49 N. Y. 47; *Johnson v. W. C. & P. R. Co.* 70 Pa. St. 365; *Delamatyr v. M. & P. du C. R. Co.* 24 Wis. 586; *Shannon v. B. & A. R. Co.* 78 Me. 52. In view of this exception to the general principle, the plaintiff here, being of such tender age and under such great fear and excitement, and with the apprehension that he would be carried away and beyond his destination if he did not get off at the platform, may well be exonerated from all blame. The age and infancy of the plaintiff must be considered in such a case, even if he is of such age as to be *sui juris* in respect to many other things. 2 Thomp. Neg. 1180. What might appear to be reasonable to a person of such tender age might be most unreasonable to an adult person of more discretion, and it was for the jury to take such difference into consideration in determining the question of contributory negligence of the plaintiff. *Barry v. N. Y. C. & H. R. R. Co.* 92 N. Y. 289; *Bryne v. N. Y. C. & H. R. R. Co.* 83 N. Y. 620; *Birge v. Gardiner,* 19 Conn. 507; *Swoboda v. Ward,* 40 Mich. 420; *Lynch v. Smith,* 104 Mass. 57; *Plumley v. Birge,* 124 Mass. 57; *Meibus v. Dodge,* 38 Wis. 300. But these considerations are self-evident, and appeal to the common reason and understanding. The plaintiff acted in the emergency as a boy of his age would be most likely to act.

3. It is contended, also, that the parents of the plaintiff ought to have instructed their son as to the dangers of the

JANUARY TERM, 1888.                51

Hemmingway vs. The Chicago, Milwaukee & St. Paul R. Co.

route and how to avoid them. The mother did do so to the extent of her knowledge, by cautioning him generally not to leave the train when it was in motion. Had she known that it was customary for the train not to stop at the depot on its first arrival there, and of its other movements, it might have been her duty to have informed him of it, as it was the duty of the conductor to have done. But she did not know of such an unaccustomed irregularity in the movement of the train, or she would most probably have informed him of it.

4. It is also alleged as error that the court allowed proof of what the gentleman who preceded the plaintiff in getting off the train said to him as to whether the train would stop there. This was said in immediate connection with the plaintiff's act in attempting to get off the train, and was explanatory of his motives and mental condition at the time, and by all authority a part of the *res gestæ*. *Twomley v. C. P., N. & E. R. R. Co.* 69 N. Y. 158; *Shannon v. B. & A. R. Co.* 78 Me. 52; Greenl. Ev. § 108, note *b; Stewart v. Hanson,* 35 Me. 507; *Church v. Rowell,* 49 Me. 371; *Norwich Transp. Co. v. Flint,* 13 Wall. 3; *Cassida v. Oregon R. & Nav. Co.* 14 Ore. 551. This evidence was not admitted for the purpose of charging the defendant with liability for what this stranger said at the time, but was admitted only as a part of the *res gestæ,* and was therefore proper. The authorities cited by the appellant's counsel to this point disapprove of such evidence only because it ought not to charge the company with liability. The court, in instructing the jury, said to them that the company was not responsible for the statements of this stranger, and that they were admitted only "as tending to throw light on the condition of the boy's mind at the time, and to show all the circumstances which influenced his action."

5. Those parts of the charge of the court to the jury relating to the general care and protection which infant pas-

sengers ought to receive from the servants of the company as the ground of the above duty to inform this plaintiff of the peculiar and unusual movements of the freight train on its arrival at Janesville, and which were excepted to, appear to have been fair and strictly correct, in the light of all authorities upon the subject.

6. That part of the charge that called the attention of the jury to the fact that the train did not stop and was not intended to stop at the platform, and excepted to because it was again submitting such fact to the jury as a failure of duty on the part of the company, which for such purpose had already been disapproved by this court, was evidently given for no such purpose. The jury were distinctly charged that such fact was not admissible to show the negligence of the company or its failure of duty. Such fact was alluded to only to show that, in view of it, it might be the duty of the company to instruct the plaintiff how to act in such case, and to inform him that the train would not stop at the depot, and its subsequent movements, so as to put him on his guard against an attempt to leave the train while thus in motion. For such purpose it was clearly proper.

7. That part of the charge which made it incumbent upon the employees of the company "to exercise *the utmost* care, diligence, and foresight for the safety" of the plaintiff while under their charge is excepted to on the ground that such a degree of care was not the rule in such a case. Abstractly considered, it may be that this part of the charge was not strictly correct. The court, however, had just instructed the jury that the negligence of the company must be shown by a *preponderance* of the evidence, and accompanied the objectionable language with the explanation that the care of an infant passenger, so unattended, should be greater than that required to be used towards an adult passenger. The language used and the rule stated could

JANUARY TERM, 1888.          53

Hemmingway vs. The Chicago, Milwaukee & St. Paul R. Co.

have no other application than to the failure of the company to so instruct, inform, and protect the plaintiff, under the peculiar circumstances of the case. That duty performed, would have been the *utmost* care, diligence, and foresight required under the circumstances. In this view, the rule, even if too stringent as a rule of law, could have done no harm to the defendant. The degree of care was sufficiently and correctly measured by the discharge of this one duty to the plaintiff, so that the jury could not have been misled by the abstract rule. It is very difficult, if not impossible, to find that the company or its employees neglected any other duty towards the plaintiff than such instruction, information, and warning by the conductor, or by his being present, or having some one present, to prevent the plaintiff from so attempting to leave the train at the platform, and to protect him from such hazard. The jury must have understood that this was the true measure of the defendant's care and responsibility, and must have so found, and we think that they were justified in so finding.

The case seems to have been most ably tried, and the rulings of the court seem to have been carefully considered and correctly and judiciously made. We can find no error in the rulings of the court, and on the merits of the case we would not be warranted in disturbing the verdict.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon a motion for a rehearing, *John T. Fish*, of counsel for the appellant, contended that it is not the duty of the conductor to explain to a passenger, however ignorant he may be, why the train makes any lawful, careful movement, unless he discovers that the passenger, through ignorance, has placed himself in a position of danger; that if such duty may arise, it only arises when the conductor is

informed that the passenger is ignorant and needs such information; and that in this case there was no evidence before the conductor *when he collected fare from* the plaintiff, tending to prove that the plaintiff was not informed of the custom of running the train past the depot, or tending to prove that the plaintiff did not know that the train would stop at Janesville.

The motion was denied June 20, 1888.

See notes to this case in 37 N. W. Rep. 804, 809.— REP.