## ERIE R. CO. v. BURKE.

(Circuit Court of Appeals, Second Circuit. April 16, 1914.)

No. 209.

RAILROADS (§ 356*)—PERSONS ON TRACK—INJURIES—CARE REQUIRED.

    Plaintiff, while walking across one of defendant's main tracks at a place where the railroad company for years had permitted the public to cross, though not a regular public crossing, slipped and caught his foot between a switch point and a rail, and, being unable to extricate himself, was run down by an approaching engine, and suffered the loss of a leg. It also appeared that the public use of the place where plaintiff crossed the tracks had been open, constant, and notorious for a long period, and had been with the acquiescence of the railroad company without any attempt to withdraw its permission to the public to so use its premises. Held, that plaintiff was not a trespasser, and that the railroad company was bound to exercise reasonable care to prevent injuring persons in plaintiff's situation.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1228–1234; Dec. Dig. § 356.*

    Care required of railroads as to trespassers on or near tracks, see note to Louisville & N. R. Co. v. Womack, 97 C. C. A. 566.]

In Error to the District Court of the United States for the Western District of New York.

Action by Martin Burke against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant herein was the plaintiff below, and the plaintiff herein was the defendant below, and they will hereafter be so referred to.

The plaintiff asserts that he is a citizen and subject of the kingdom of Great Britain and that for a number of years he has been a resident of the state of Ohio.

The defendant is a corporation, organized, incorporated, and doing business under the laws of the state of New York and which operated and still operates a railroad in the city of Cleveland in the state of Ohio.

The action was brought to recover for personal injuries which the plaintiff received in an attempt to cross the tracks of the defendant company in Cleveland. The plaintiff in his petition alleged that on August 11, 1909, in the early dusk of the evening, while going to his work as an employé of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

American Steel & Wire Company, he stepped onto the right of way of the defendant in the act of walking across one of its main tracks in order to get to his place of work, and while so proceeding slipped and caught his right foot between the rails of one of the switch tracks and main tracks and was held fast so that he could not extricate himself; that while he was in this situation the employés of the defendant in charge of an engine and several cars negligently ran down upon him; that he was only able to throw himself outside of the rail leaving the foot and lower part of his leg between the rails cutting off his foot; that before he stepped upon the track he looked in both directions and the locomotive which ran over his leg was not then in sight; that the employés in charge of the locomotive, knowing that the right of way at the place where the accident occurred was extensively used as a footpath, were guilty of negligence; and that if they had been in the exercise of ordinary care they could have seen the plaintiff in his perilous position with his foot caught, waving his arms and hallooing and whistling, in ample time and sufficiently far distant from him to have avoided running over him.

He demanded a judgment for $20,000.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y., for plaintiff in error.

Henry W. Brush, of Buffalo, N. Y., and C. W. Dille and Sylvester V. McMahon, both of Cleveland, Ohio, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is an action to recover for personal injuries. The plaintiff in undertaking to cross the tracks of the defendant railroad caught his right foot in a switch point in the defendant company's railroad track. Four wheels of a locomotive engine in charge of the defendant's employés ran over the lower part of his leg. The leg was subsequently amputated about 5½ inches below the knee, and the plaintiff was obliged to be in a hospital for weeks and went about on crutches for 12 months.

The railroad company claims that the plaintiff was nothing more than a trespasser or at best a mere licensee toward whom it owed no duty except to refrain from wantonly or willfully injuring him. The defendant asserts that the plaintiff was not upon its tracks upon invitation, express or implied, nor because of any business connected with it, but was there upon his own volition, uninvited, concerning a matter which was personal to himself and in which the defendant had no interest; that as the plaintiff was using the tracks for his own convenience alone, and not for any purpose of business connected with the defendant and was in a place of known danger, he was there at his own risk and assumed the attendant perils.

The courts have held in numerous decisions that a licensee enters upon the premises at his own risk and enjoys the license subject to its concomitant perils. The rule has been so laid down in the courts of Ohio, where this accident occurred (Kelly v. Columbus, 41 Ohio St. 263), and by the courts of New York where this action was brought (Sterger v. Van Sicklen, 132 N. Y. 499, 30 N. E. 987, 16 L. R. A. 640, 28 Am. St. Rep. 594). And in a case in the Ninth Circuit the Circuit Court of Appeals decided, in Smith v. Day, 100 Fed. 244, 40 C. C. A. 366, 49 L. R. A. 108 (1900):

"That one going voluntarily in the prosecution of his own business on premises where blasting was being done by contractors, knowing that blasting was

going on, assumed the risks incident to the prosecution of the work with ordinary care, though he was there by sufferance or permission of the contractors."

It is said in New Jersey that a licensee is only relieved from being a trespasser and that he must assume all the ordinary risk attached to the nature of the place or the business carried on. Phillips v. Library Company of Burlington, 55 N. J. Law, 307, 27 Atl. 478. In 29 Cyc. 449, the law is stated as follows:

"The rule is well settled that an owner of premises owes to a licensee no duty as to the condition of such premises unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wantonly or willfully cause him harm."

The question we have to consider is whether the defendant company under the circumstances of this case was governed by the principle above stated and was under no obligations to the plaintiff except to refrain from wantonly or willfully causing him harm.

The court in the charge to the jury instructed them in reference to this matter as follows:

"The general rule of law is, gentlemen, that, if a person goes upon the tracks of a railroad without permission or license to do so, he becomes a trespasser, and under such circumstances the single duty devolving upon the railroad company is to avoid injuring such person unnecessarily if he is observed to be upon the tracks or premises of the railroad company. In such situation as that, where a person has intruded himself upon the roadway or tracks of a railroad company, the railroad company owes no duty until the intruder or trespasser is observed, and then such acts or steps must be taken by those in charge of the train as to avoid injuring the person if possible.

"Of course, gentlemen, if a trespasser or intruder upon the tracks of a railroad company is menaced by an approaching train, and if he is perceived, then the railroad company is liable if those in charge of the train wantonly or recklessly do an injury to such person; but this rule of law need not concern you, because it is not applicable to the facts in this case. It is not claimed—except so far as it may be claimed by the defendant—that the plaintiff was a trespasser, but what I mean to say is that the rule of law applying to a trespasser does not obtain herein, but another rule of law, and the one I shall shortly call your attention to; preliminarily, you should understand that a railroad company in operating its cars and trains has ordinarily the right to presume that its tracks are free from trespassers, and when a moving train is away from a crossing it cannot be expected to extend a higher duty toward persons having no right to be on the tracks than to avoid wantonly, willfully, and unnecessarily injuring them. * * *

"There is, however, another rule which you should understand, and that is that where a railroad company has allowed the public to go upon its tracks along its right of way for a particular distance in order to reach a particular place, and to go across the tracks—such permission being express or implied, the railroad company is bound to use ordinary care to avoid injuring those persons present on the tracks—those persons whom it has reasons to anticipate may be there in the course of the existence of the license. * * *

"In such a situation the railroad company is required to exercise reasonable care in the movement of its trains at the point where persons are known to cross; the right to refuse such crossing, or such use of the tracks and exclude the persons from its right of way is with the railroad company; but, having permitted such use, or assented thereto, or having refrained from objecting or interfering or enforcing such objection, it is bound to take notice of the danger to those who may cross or walk along the tracks at that point, and exercise caution and reasonable care in the operation of its trains, to the end that no injury may result. In such situation, gentlemen, ordinary care is required of the railroad company as well as of the person using the license.

The theory of the law, as I have stated, is that, if the company has knowledge of the manner in which its tracks are used by pedestrians, and having by its acquiescence for a long period of time agreed to such custom or use, it is obliged to manage its trains with care, and to give warnings, or even reduce its speed, if circumstances should require, in order to avoid injury to others.

"But, gentlemen, the use of the tracks for crossings or walking along must have been definite, long, open, and continuous, and generally known.   *   *   *

"I read the law, in the rule which applies to a trespasser and to a bare licensee, so that it becomes important, from the facts disclosed by this record that you should scrutinize the evidence carefully and ascertain whether there was a mere license—a bare license, as the cases call it, to pass along these tracks, or to cross over them, or whether the implied license or permission was of such nature as to justify applying the rule that reasonable care should have been exercised by the railroad company in moving its trains at this point.

"I direct you again to carefully scrutinize the evidence upon this subject of implied license or permission to use this right of way, for you will remember that the defendant claims, and has given evidence to support the claim, that no such use had ever been made of this right of way as claimed by the plaintiff.   *   *   *

"If you reach the conclusion that the plaintiff was a trespasser at the time of the accident, and that he was not perceived by the engineer and fireman in time to stop the train and avoid the injury, then the plaintiff is not entitled to recover.

"If you reach the conclusion that he was a bare licensee upon the right of way of the defendant, for his own convenience solely, and there was no implied license, as I have endeavored to define that term, then, likewise, the plaintiff is not entitled to recover, unless there is a feature in this case which justifies you in reaching the conclusion that the injuries could have been avoided after his presence became known.

"Should you reach the conclusion, however, that there was an implied license, that the public and persons living in that locality had, by reason of the acquiescence of the defendant railroad company, the right to use that way going to their work places and in coming therefrom, and used it in large numbers—that it was customarily used as a place of ingress and egress to the various plants in that locality—then, manifestly, the plaintiff had the right to use it at the time of the accident in question, as it was his custom to use it.

"Should you reach that conclusion, then you take up the next question, viz., whether the defendant railroad company failed in a duty which it owed the plaintiff.

"As I have already stated, the single claim of negligence is not that the train was proceeding at this point at a rapid rate of speed, not that bells were not rung to give warning to those that might be on the right of way—for, concededly, the train was running slowly—but the claim is that the engineer should have seen this man in his predicament, and should have stopped his train before striking him."

We find no error in this charge to the jury.

There are cases, it is true, which seem to recognize no distinction between the liability to implied licensees upon the premises of a railroad company, at places where the company is legally entitled to the exclusive occupation, and those who go upon the premises as mere naked trespassers. We shall not now undertake to review the cases at length or to collate the authorities. We shall content ourselves with a reference to a few cases which seem to us to lay down the principle which should be applied to such cases as the one at bar.

The Court of Appeals in New York had the question under consideration in 1883, in Barry v. New York Central, etc., R. Co., 92 N. Y. 290, 44 Am. Rep. 377. In that case the plaintiff was run over by a

train of whose approach no warning was given, while crossing a railway at a place which the people of the vicinity had openly and continuously used as a crossway for some thirty years. The court in its opinion said:

"There can be no doubt that the acquiescence of the defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to a license and permission, by the defendant, to all persons to cross the tracks at this point."

And it held that these circumstances imposed a duty upon the defendant in respect of persons using the crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but, so long as it permitted the public use, the court held it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury.

The same court reasserted this doctrine in 1909 in Lamphear v. N. Y. Central, etc., R. Co., 194 N. Y. 172, 86 N. E. 1115. In this case, as in the former, there was evidence of the constant public use of the path for many years.

In 1896 the question came before the Circuit Court of Appeals in the Sixth Circuit in Felton v. Aubrey, 74 Fed. 350, 20 C. C. A. 436. In an opinion written by Judge Lurton and concurred in by Judges Taft and Hammond, the rule was stated as follows:

"The rule we deduce from the cases best reasoned and most consistent with sound public policy is this: If the evidence shows that the public had for a long period of time, customarily and constantly, openly and notoriously, crossed a railroad track at a place not a public highway, with the knowledge and acquiescence of the company, a license or permission by the company to all persons to cross the track at that point may be presumed. * * * Persons availing themselves of such an implied license would not be trespassers, and the railroad company would come under a duty in respect to such licensees to exercise reasonable care in the movement of its trains at points where it was bound to anticipate their presence."

And see to the same effect Tutt v. Illinois Central R. Co., 104 Fed. 741, 44 C. C. A. 320; Garner v. Trumbull, 94 Fed. 321, 36 C. C. A. 361; Cahill v. Milwaukee & St. Paul R. Co., 74 Fed. 285, 20 C. C. A. 184.

There was evidence in the case at bar from which a jury might find that the public had been permitted for years with the acquiescence of the railroad company to use the tracks at the place of this accident in the manner this plaintiff used them at the time when this injury occurred. And if the jury found that such use by the public had been open, constant, and notorious for a long period of time, and that at the time of the accident the railroad company was not in the exercise of reasonable care in the movement of its train at that point, then it was the duty of the jury to bring in a verdict for the plaintiff.

The case of Delaware & H. R. Co. v. Wilkins, 153 Fed. 845, 83 C. C. A. 27, decided by this court in 1907, is distinguishable from the case now before us. We did not in that case pass upon the question wheth-

er a railroad was under any, and, if so, what obligation, to one using its tracks at a place where the public had made use of them for years. On the contrary, we expressly disclaimed doing so, saying:

"It will not be necessary, however, to discuss the law or the facts bearing upon that branch of the case."

We held that upon the facts of that case it was error to deny the motion made at the close of the case to direct a verdict in favor of the defendant because of the plaintiff's intestate's contributory negligence. The intestate had been killed while walking as a licensee along the railroad track. He was aware of the approach of the train, and stepped outside the rails to stand until it should pass him. In doing so he stood so close to the track that he was hit by the bucking beam of the engine pilot, though a single step back would have placed him in a position of safety. We thought upon the facts that he was negligent as a matter of law. The evidence also showed in that case that while the track and roadbed had been used to a considerable extent continuously for several years as a short cut to the marble yards where the intestate worked, and the fact had been known to the railroad company, the company had endeavored by putting up signs and by scattering coarse stones along the roadbed to put a stop to it.

In the case at bar it was not claimed by counsel for the railroad company that the plaintiff was, as a matter of law, negligent.

Judgment affirmed.